**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

ANTWON MANNING,

      **Plaintiff,**

v.

RYAN KILDUFF, DARREN
GALLOWAY, and KARL BRADFORD,

      **Defendants.**

Case No. 24-cv-1719-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Antwon Manning, an inmate of the Illinois Department of Corrections who is currently incarcerated at Shawnee Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.

The matter is before the Court on a motion for summary judgment on the issue of administrative exhaustion filed by Defendants Karl Bradford, Ryan Kilduff, and Darren Galloway (Docs. 54, 55). Manning filed a response (Doc. 59) in opposition to the motion. Defendants filed a reply (Doc. 60).

### BACKGROUND

On July 16, 2024, Manning filed a Complaint alleging that he was retaliated against for filing lawsuits. Specifically, Manning alleged that he was issued a disciplinary ticket that, although factually accurate, charged him with infractions that did not match his actions (Doc. 9, p. 2). Manning alleged that adjustment committee member Karl Bradford

1

found him guilty of the disciplinary ticket despite his defense. Manning alleged Bradford acted in retaliation because Manning had previously filed a lawsuit against Bradford regarding his handling of another disciplinary ticket (*Id.*). Warden Darren Galloway signed off on the ticket (*Id.* at p. 3). Manning alleged Galloway also retaliated against him due to Manning's lawsuit against Galloway (*Id.*). Manning wrote a grievance regarding the ticket and alleged that Warden Darren Galloway and Administrative Review Board ("ARB") member Ryan Kilduff failed to investigate and ultimately denied the grievance in retaliation for Manning's previously filed lawsuit.

After review of the Complaint pursuant to 28 U.S.C. § 1915A, Manning was allowed to proceed on the following count:

Count 1:    First Amendment retaliation claim against Karl R. Bradford, Darren Galloway, and Ryan Kilduff for issuing a false disciplinary ticket and upholding it through the grievance process in retaliation for Manning filing a lawsuit.

(Doc. 9, p. 6).

The parties agree that Manning filed one grievance relevant to his claim. On February 8, 2024, Manning submitted Grievance #K19-24-02-95 regarding his disciplinary ticket (Doc. 54-2, pp. 34-41). He alleged that Correctional Officer ("C/O") Glover issued him a ticket for Dangerous Disturbance, Damage or Misuse of Property, and Disobeying a Direct Order (*Id.* at p. 36). Manning's grievance acknowledged that he left his cell unauthorized and went to the dayroom, but he argued that the charges failed to match his actual actions (*Id.* at pp. 36-37). He also claimed that Glover failed to substantiate the elements of each violation in his ticket (*Id.* at p. 37). Manning complained

that he was found guilty of disobeying a direct order despite Glover failing to state that Manning was ever given a direct order (*Id*. at p. 37). Manning noted that he was not charged with unauthorized movement which was actually the infraction he committed by leaving his cell (*Id*.). His grievance noted that he explained his issue with the charges to Bradford during the hearing on February 7, 2024, but Bradford still found him guilty of two of the charges. Bradford found Manning not guilty of damage or misuse of property (*Id*.).

On February 20, 2024, the grievance officer received Manning's grievance and reviewed the grievance the same day. The grievance officer claimed that Manning's ticket had not yet been heard by the adjustment committee (Doc. 54-2, p. 35). The grievance officer noted that the disciplinary ticket could not be grieved until it went through the entire process, including a hearing before the adjustment committee and the findings signed by the Chief Administrative Officer ("CAO") (*Id*.). That same day, the CAO concurred with the grievance officer's findings (*Id*.).

On February 22, 2024, Manning appealed the grievance to the ARB (Doc. 54-2, p. 35). He included a response to the grievance officer's findings (*Id*. at pp. 38-39). Manning noted that he had a pending lawsuit against Bradford and Galloway due to Bradford finding him guilty of a previous disciplinary ticket (*Id*.). He claimed the lawsuit was filed a few months prior to his current disciplinary ticket (*Id*.). Manning claimed that the grievance officer lied in his response when he alleged that the disciplinary ticket had not yet been heard by the adjustment committee. He noted that he attended the hearing on February 7, 2024, was found guilty, and then submitted his grievance the next day (*Id*.

at pp. 38-39). He alleged that officials were trying to prevent him from challenging his ticket and challenging Bradford's actions (*Id.* at p. 39). Manning claimed he was facing a cover-up by the prison (*Id.*).

On February 28, 2024, the ARB received Manning's grievance (Doc. 54-2, p. 34). Kilduff noted that Manning grieved a January 24 disciplinary report, noting the incident number "202400165/1-SHA". But he ultimately denied the ticket, noting that there was no record of the disciplinary ticket (*Id.*).

Although Manning's grievance was fully exhausted, Defendants argue that the grievance failed to include any allegations that Bradford, Galloway, or Kilduff retaliated against him (Doc. 55, p. 10). Manning did not include allegations regarding his pending lawsuit and his belief in a "cover-up" until he submitted the grievance to the ARB and included his response letter and information regarding his lawsuit (Doc. 54-2, pp. 38-41). In response, Manning argues that his original grievance made clear that he believed Bradford participated in "trumped charges" and found him guilty on the charges (Doc. 59, p. 2). Manning argues that because the grievance officer claimed that the hearing had not yet occurred when Manning noted the hearing date in his grievance, Manning believed that the grievance officer and Warden Galloway, who signed off on the grievance, were part of a cover-up (*Id.* at p. 3). Manning argues that he chose not to write a follow-up grievance claiming that the warden and ARB official denied the grievance because the officers would have been the ones to respond to the grievance (*Id.*). He believed he would face more harassment and cover-ups as a result of a grievance against Galloway and Kilduff (*Id.*).

4

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative

remedies" are not required to be decided by a jury but are to be determined by the judge.[1]

Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

## A. Illinois Exhaustion Requirements

As an IDOC inmate, Manning was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claim. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures

---

[1] Recently the Supreme Court partially overruled *Pavey* in *Perttu v. Richards*, 605 U.S. 460 (2025). Specifically, the Supreme Court held that "parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Id*. at 479. Here, the issue of exhaustion is not intertwined with the merits of Manning's underlying claims. Thus, *Perttu* is not applicable.

6

first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ["CAO"] within two months after receipt of the written grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The [CAO] shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the [ARB] within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal.

*Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

### DISCUSSION

Because there are no disputes of material fact, an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), is not necessary. The parties merely dispute

8

whether Manning's February 8, 2024 grievance adequately exhausted his retaliation claim against Defendants.

Exhaustion of administrative remedies is not intended to provide individual notice to each prison official who might later be sued; it is designed to provide the prison with notice of the problem and give them an opportunity to fix it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). The grievance procedures require that an inmate name the individuals involved in the complaint, or, if their names are not known, an inmate must, as the very least, "include as much descriptive information about the individual as possible." 20 Ill. Admin. Code § 504.810(c). Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox*, 655 F.3d at 722.

Manning's grievance adequately apprised prison officials of his issue with Karl Bradford. He alleged the ticket was improper and Bradford found him guilty despite Manning informing him of the issues with the ticket. He further asked for Bradford to be removed from the adjustment committee. Although he did not mention that he believed the disciplinary ticket or the guilty finding was an act of retaliation, he informed the prison that there were issues with the ticket that he wanted investigated. He was not required to articulate the legal theory he intended to pursue in his future litigation. *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Thus, the prison had a fair notice of Manning's issues with Bradford and the disciplinary ticket.

But Manning's grievance does not mention Warden Galloway or ARB Chairman Ryan Kilduff. Manning does include Galloway in his letter to the ARB, but those allegations were not submitted to the grievance office with his original grievance. A plaintiff must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. *See also Pavey*, 663 F.3d at 905 ("When administrative procedures are clearly laid out ... an inmate must comply with them in order to exhaust his remedies."). IDOC's Administrative Code requires that an inmate first submit his grievance to the prison with either the counselor or the grievance officer. 20 Ill. Admin. Code § 504.810(a). Here, Manning failed to include his complaints against Galloway in his original grievance, and the prison grievance officials were never given an opportunity to address his complaints regarding the warden.[2] Because Manning failed to present his complaints regarding Galloway to the prison, as required by IDOC's grievance process, he failed to exhaust his claims against Galloway.

Manning argues in his response that it made no sense to submit a grievance

---

[2] The Court notes that the Seventh Circuit has stated in dicta that when the ARB ruled on a grievance that included a "continuation" of allegations with additional dates of violations, and failed to reject the grievance on procedural grounds, the defendants were barred from relying on the procedural defect at the summary judgment stage. *Conley v. Anglin*, 513 F. App'x 598, 602 (7th Cir. 2013). The Seventh Circuit stressed that the defendants failed to cite to any rule or administrative code barring such additions to an appeal; the opinion did not specifically state that additions were allowed under the rules. *Williams v. Baldwin,* 239 F. Supp. 3d 1084, 1092 n. 8 (N.D. Ill. 2017). But the Illinois Administrative Code specifically requires that grievances submitted at the prison "contain factual details regarding each aspect of the offender's complaint" and limits the topics that can be directly submitted to the ARB. *See* 20 Ill. Admin. Code §§ 504.810(c) and 504.870(a). Nor does it appear that the ARB in this case even considered the additional filing as the ARB denied the grievance because there was no record of the ticket (Doc. 54-2, p. 34). The ARB's response contains no mention of the investigation of the grievance by the prison. Thus, this case is distinguishable from the situation presented in *Conley.*

regarding the actions of Galloway and Kilduff because they were part of the "cover-up" and reporting their actions would have led to further harassment aimed at him. He also claims that he could not submit a grievance regarding Kilduff because Kilduff was with the ARB and not an employee of the prison. But "there is no 'futility exception' to the PLRA exhaustion requirement." *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). An inmate is required to exhaust his administrative remedies regardless of whether he believes the attempt will be futile. *Dole*, 438 F.3d at 809. Here, Manning could have sought to file a grievance informing officials about the alleged retaliation of Galloway and Kilduff, but he failed to do so. Thus, he failed to exhaust his claim against Galloway and Kilduff.

### CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Docs. 54, 55) is **GRANTED in part and DENIED in part**. Summary judgment is **GRANTED** as to Darren Galloway and Ryan Kildruff but **DENIED** as to the claim against Karl Bradford. The claims against Galloway and Kilduff are **DISMISSED without prejudice** for Manning's failure to exhaust his administrative remedies.

**IT IS SO ORDERED.**

**DATED:  July 31, 2026**

_____

**NANCY J. ROSENSTENGEL**
**United States District Judge**

11